380 A.2d 902

Mary Ann CONNELLY, Administratrix of the Estate of Michael J. Connelly, Jr., Deceased, Appellee,

v.

Ina ZIEGLER, James E. Ziegler and Joyce Ziegler, Individually and t/d/b/a Shopper's Lounge, Appellants,

v.

Bernard P. MONTELL.

Superior Court of Pennsylvania.

Submitted April 11, 1977.

Decided Dec. 2, 1977.

522

Robert L. Orr, Beaver, for appellants.

Edward J. Balzarini, Pittsburgh, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT, and SPAETH, JJ.

VAN der VOORT, Judge:

This is a wrongful death and survival action filed by the administratrix of Michael J. Connelly, Jr. who died as a result of an accident which occurred on December 24, 1973. His administratrix, the appellee, sued the owners of a tavern where the decedent had been drinking during the afternoon and evening of the accident. The tavern owners joined as an additional defendant an individual who owned the home where the accident occurred, but that individual was exonerated by the jury. During the course of the trial the original defendants made a timely motion for binding instructions which was denied. The jury returned a verdict in the amount of $60,000 in favor of the administratrix-appellee against the original defendants-appellants. The appellants filed a post-trial motion for a judgment non obstante veredicto which was denied by the court en banc. Judgment was entered for the appellee and the appellants have appealed, contending, as they did before the court en banc, that the evidence was not sufficient to justify a submission of the case to the jury. They ask for a judgment n. o. v., not a new trial.

In determining the propriety of a judgment n. o. v., the controlling question is, would binding instructions for the appellants have been proper at the end of the trial; and in deciding that point, the evidence must be read in the light most favorable to the appellee, the latter being given the benefit of every fact and inference of fact pertinent to the issues which might legitimately be drawn from the evidence: *Smith v. Standard Steel Car Co.*, 262 Pa. 550, 552–3, 106 A. 102 (1919). See also *Dalmas v. Kemble*, 215 Pa. 410, 412–13, 64 A. 559 (1906) for an historical explanation of our judgment n. o. v. procedure.

■ The appellee's right of recovery is premised upon that portion of the Pennsylvania Liquor Code, 47 P.S. 4–493, which provides that:

"It shall be unlawful for any licensee . . . or any employee, servant or agent of such licensee, . . . or any other person, to sell, furnish or give any liquor or malt or brewed beverages, or to permit any liquor or malt or brewed beverages to be sold, furnished or given, to any person visibly intoxicated . . ."

As a consequence of that statute, if a tavern keeper serves intoxicating liquor to anyone who is in a visible state of intoxication, he violates the law, and, if as a result of such intoxication the consumer of the intoxicants injures someone else or himself, the tavern keeper is liable in tort: *Smith v. Evans*, 421 Pa. 247, 249, 219 A.2d 310 (1966).

■ The appellee's burden of proof was twofold, requiring (1) evidence sufficient to sustain a finding that an employee of appellants had served liquor to the decedent while he was visibly intoxicated; and (2) evidence sufficient to sustain a finding that the decedent's intoxication was a contributing cause of his death.

■ The evidence on both issues is essentially undisputed. Concerning service of liquor to the decedent while visibly intoxicated, we start with the testimony of both the bartender in the appellants' tavern and the drinking companion of the decedent that the decedent and his drinking companion were in the appellants' bar on December 24, 1973, from approximately 1 P.M. until closing time at about 9 P.M. with the exception of about one hour between 5:00 and 6:00 P.M. when they were absent from the bar on an errand. The same witnesses testified that during this period of approximately seven hours that the decedent was in the appellants' bar he drank bourbon and water at the rate of four or five shots an hour and consumed, in total, something more than a fifth of whiskey, as did his drinking companion.

The bartender, who had had more than three years' experience in that role, testified that he knew when someone was

visibly intoxicated and how they would usually look and act. He testified that if the decedent had not been a regular customer his condition was such that he would not have served him any more. He described the decedent as "loaded" and "high" by the time he left the bar.

The decedent's drinking companion testified that he and the decedent drank three or four shots an hour during the seven hour period and that they drank faster as the evening wore on. He testified that he had been a very good friend of the decedent for about five years and knew him to be a man of quiet demeanor when sober. He said that by 7 o'clock the decedent was "definitely not sober" and was laughing and joking in a loud manner which was quite characteristic of him when drunk but not so when sober.

The decedent's wife, the administratrix, testified that the decedent telephoned her shortly before he left the bar at about 9 P.M. but that his conversation was incoherent and out of character. She said that he giggled, whistled, joked, repeated himself, slurred his words and generally talked in such a manner that she couldn't make sense out of the conversation.

All of the foregoing testimony was undisputed. It seems abundantly clear that the jury was entitled to draw the conclusion from the testimony and the reasonable inferences to be drawn from it that appellants' bartender had served the decedent liquor while he was visibly intoxicated.

The second step in appellee's case required evidence from which the jury could reasonably conclude that the decedent's injury and death were the result of his intoxication. It was the testimony of the decedent's drinking companion that when they left the bar the decedent drove to the home of Bernard P. Montell, the additional defendant, located some two miles from appellants' bar. Mr. Montell testified that he and the decedent were good friends of some two or three years standing. Both Mr. and Mrs. Montell testified that the decedent was intoxicated at the time of his arrival. Mrs. Montell testified that upon entering her home the decedent apologized for his condition and said that he was intoxicated.

She said that his speech was slightly slurred. Mr. Montell also testified that the decedent expressed reluctance to meet Mr. Montell's parents, who were guests in the house, while in his intoxicated condition. Mr. Montell offered the decedent a drink which the decedent knocked from his hand. It was Mr. Montell's further testimony that in due course the decedent asked to use a basement bathroom, that he went to the basement stairs, took a couple of steps down the stairs, then fell to the bottom and was rendered unconscious. He was taken to the Rochester Hospital where he died sometime later as a result of his injuries. Mr. Montell testified that the stairwell was well lighted and that there was nothing on the stairs which could have caused the decedent to fall. He testified that the decedent had nothing to drink while at his house. Again the evidence is clearly sufficient to justify the jury in concluding that the decedent's intoxication contributed to or caused his injury and death.

*Majors v. Brodhead Hotel*, 416 Pa. 265, 205 A.2d 873 (1965), establishes the guidelines by which to judge the adequacy of the evidence in the case at bar. In *Brodhead* a decedent, while attending a dance in the ballroom of the Brodhead Hotel in Beaver Falls, purchased a drink at the bar of the hotel. At the time he purchased the drink he was already intoxicated as the result of other drinking he had done earlier that evening at the hotel. After purchasing the drink at the bar, the decedent, while in the restroom of the ballroom which was located on the fifth floor of the hotel, crawled out of the window of the restroom, across the roof and either fell or jumped forty-five feet to his death on the kitchen roof of the hotel. The question of the violation of the Liquor Code and the issue of proximate causation were submitted to the jury which returned a verdict in favor of the decedent's representative. The judgment was affirmed by the Supreme Court which explained the rationale of its conclusion as follows:

"Plaintiff's case was tried upon the theory that defendant's liability rested upon the serving of liquor to plaintiff while he was visibly intoxicated in violation of the 'Liquor Code' . . .

"This provision was, in part, intended to protect the interest of another as an individual. Also, the interest of the plaintiff which was invaded here was one which the act intended to protect. Accordingly, in cases such as this, we have held that a violation of this statute is negligence per se and, if the violation was the proximate cause of plaintiff's injury, defendant is liable for it . . .

"In the case at bar there was no evidence that defendant served plaintiff at his table while visibly intoxicated. However, there was clear and direct evidence, although it was contradicted, that plaintiff was served one drink at the bar at about 12:30 a. m., and there was a great deal of uncontradicted evidence that plaintiff was visibly intoxicated at that time. Accordingly, the jury was justified in finding that there was a violation of the statute and that, therefore, defendant was negligent per se . . ." (416 Pa. pp. 268–9, 205 A.2d p. 875)

". . . defendant argues that its conduct was not the proximate cause of plaintiff's injury because the events intervening between the violation of the statute and the accident prevents the violation from being a legal cause . . . We have held, following Section 435 of the Restatement of Torts, that '[i]f the actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw nor should have foreseen the *extent* of the harm or the *manner* in which it occurred does not prevent him from being liable.' (Emphasis supplied). *Shipley v. Pittsburgh*, 321 Pa. 494, 496, 184 A. 671 (1936). *Roach v. Kelly*, 194 Pa. 24, 44 A. 1090 (1899) is inapposite because in that case a superseding cause was found to relieve defendant of liability. The evidence in this case does not raise such a question. Even if it did the resolution of the issue would certainly not be clear from doubt and, therefore, would be left to the jury. *Anderson v. Bushong Pontiac Co.*, 404 Pa. 382, 391, 171 A.2d 771, 775 (1961)." (416 Pa. p. 270, 205 A.2d p. 876) "It is well established in Pennsylvania that in order to find that defendant proximately caused an injury it must

528

be found that his allegedly wrongful conduct was a substantial factor in bringing about plaintiff's injury even though it need not be the only factor . . ." (416 Pa. p. 271, 205 A.2d p. 877)

"When plaintiff has proved that defendant served him while visibly intoxicated, in violation of the statute, and that the injury resulted from intoxication then an inference *may be* drawn that the illegal serving was a substantial cause of the injury . . . ." (416 Pa. p. 272, 205 A.2d p. 878)

We conclude that the testimony and the reasonable inferences to be drawn from it justified the jury in the case at bar in concluding that the appellants' bartender had served liquor to the decedent while visibly intoxicated and that the accident which caused his death was the result of that intoxication. There is, therefore, no basis for reversing the judgment entered in favor of the appellee.

Affirmed.