## Painter v. Reifsnyder

*Joseph J. Lombardo,* for plaintiffs.
*William E. Haggerty,* for defendant.

ECKMAN, *J.,* November 9, 1981—Presently before the court is a motion for partial judgment on the pleadings filed by defendants, Leroy C. Reifsnyder and Jane D. Reifsnyder, to that part of

counts I and II requesting punitive damages in the complaint filed by plaintiffs, John C. Painter, Jr., Administrator of the Estate of Vikki L. Painter, and Brenda S. Painter.

Plaintiffs commenced a "Dram Shop" action by filing a writ of summons in trespass against defendants, Leroy C. Reifsnyder and Jane D. Reifsnyder, on March 12, 1980. On September 22, 1980, plaintiffs filed a complaint seeking, inter alia, punitive damages as a result of an automobile accident in which Vikki L. Painter was killed and her mother, Brenda S. Painter, was injured when their vehicle collided with a vehicle driven by Robert Lee Eby. The complaint alleges that the Reifsnyders, alleged owners of the Denver House at 240 Main Street, Denver, Pa., served substantial quantities of alcoholic beverages through their agents, Charles J. Treier and Lorraine M. Treier, to Robert Lee Eby, after he had become visibly intoxicated in violation of the Pennsylvania Liquor Code.[1] Defendants filed their answer on January 16, 1981. On March 17, 1981, the court consolidated the original action with another action involving the same plaintiffs and defendants, Robert Lee Eby, Charles J. Treier and Lorraine M. Treier. The present motion was filed by defendants, Leroy C. and Jane D. Reifsnyder, on June 4, 1981. On July 22, 1981, defendants, Leroy C. Reifsnyder and Jane D. Reifsnyder, filed an amended answer joining Charles J. Treier and Lorraine M. Treier as additional defendants.

Count I of the complaint alleges negligence resulting in personal injuries to Brenda S. Painter. Count II contains a wrongful death action. Plaintiffs in their brief concede that punitive damages

1. Act of April 12, 1951, P.L. 90, art, I, sec. 101 et seq., as amended, 47 P.S. §1-101.

are prohibited in a wrongful death action. Hence we will only address the issues of punitive damages as it pertains to Count I.

Defendants uniquely contend that since the complaint arises out of the use or maintenance of a motor vehicle the Pennsylvania No-fault Motor Vehicle Insurance Act[2] should apply and that being the situation there can be no recovery of punitive damages in this action because plaintiffs have not alleged that their injuries were intentionally inflicted in accordance with the definition of "intentional" as defined in section 208(b)(1) of the No-fault Act:[3] Teagle v. Hart, 279 Pa. Superior Ct. 487, 421 A. 2d 304 (1980). There appears to be no dispute that plaintiffs have alleged a valid cause of action for punitive damages at common law.

Judgment on the pleadings may be entered only in clear cases, where there are no issues of fact, and only where the moving party's right to prevail is so certain that a trial would be a fruitless exercise: Waldman v. Shoemaker, 367 Pa. 587, 80 A. 2d 776 (1951); Leidy v. Deseret Enterprises, Inc., 252 Pa. Superior Ct. 162, 381 A. 2d 164 (1977).

In contending that the No-fault Act applies, defendants rely on Singer v. Sheppard, 464 Pa. 387, 397, 346 A. 2d 897, 904 (1975). There, the Pennsylvania Supreme Court in upholding the constitutionality of the No-fault Act held that section 301(a) of the No-fault Act totally abolishes any remedy in negligence for those persons not within the six enumerated exceptions. Since plaintiffs do not fall within one of these enumerated exceptions under the allegations of their complaint, defendants contend that plaintiffs cannot look to the negligence of

---

2. Act of July 19, 1974, P.L. 489, art I, as amended, 40 P.S. §1009.101 et seq.

3. No-fault Act, supra, 40 P.S. §1009.208(b)(1).

defendant tavern owners as a source of recovery for their losses. We do not agree.

We believe the interpretation of the provisions of the No-fault Act enunciated in Smith v. Narques, 8 D. & C. 3d 771 (1978), by the Allegheny County Court to be dispositive of the issue. In that case, plaintiff was injured when struck by defendant's bicycle when alighting from a bus. Defendant claimed that alighting from a bus was a "use of a motor vehicle and that plaintiff's negligence action was abolished by the No-fault Act. Judge Wettick held to the contrary and construed section 301 of the No-fault Act " . . . to abolish tort liability with respect to injuries arising out of the maintenance or use of a motor vehicle only as to claims against owners and operators of motor vehicles for which no-fault security is required." Smith v. Narques, supra, p. 773. In looking to the purposes of the No-fault Act, the court noted, at pp. 773-4:

"The purpose of this legislation [No-fault Act] is 'to establish at reasonable cost to the purchaser of insurance, a Statewide system of prompt and adequate basic loss benefits for motor vehicle accident victims and the survivors of deceased victims.' section 102(b). This purpose will not be furthered by permitting an actor whose alleged tortious conduct does not arise out of the maintenance or operation of a motor vehicle and who has no obligation to provide no-fault benefits to obtain section 301's protections merely because at the time of the injury the injured party happened to be occupying, entering into or alighting from a motor vehicle. To extend section 301's protections to this actor will neither benefit the victim because the actor does not provide no-fault benefits for economic losses in lieu of tort damages upon a showing of fault nor

reduce the cost of automobile insurance because a tort recovery against the actor in no way increases automobile insurance costs."

The facts and holding of Smith v. Narques, supra, are analogous to the present action. Defendants, as tavern owners, are not required in any way to provide no-fault benefits for economic loss suffered in an automobile accident caused by someone consuming alcohol at their establishment. Their liability is predicated upon tortious activity clearly defined in section 493 of the Liquor Code[4] which provides:

"It shall be unlawful—(1) For any licensee or the board, or any employe, intoservant or agent of such licensee or of the board, or any other person, to sell, furnish or give any liquor or malt or brewed beverages, or to permit any liquor or malt or brewed beverages to be sold, furnished or given, to any person visibly intoxicated, or to any insane person or to any minor, or habitual drunkards, or persons of known intemperate habits."

Under this section, if a tavern keeper is found to serve intoxicating liquor to anyone who is in a visible state of intoxication which results in the consumer of intoxicants injuring himself or someone else, the tavern keeper may be liable for negligence: Jardine v. Upper Darby Lodge No. 1973, 413 Pa. 626, 198 A. 2d 550 (1964); Connelly v. Ziegler, 251 Pa. Superior Ct. 521, 380 A. 2d 902 (1977).

The Pennsylvania legislature clearly intended to provide for the imposition of such liability by stat-

---

4. Liquor Code, supra, 47 P.S. §4-493(1).

ing the purpose of the legislation in section 104 of the Liquor Code:[5] "This act shall be deemed an exercise of the police power of the Commonwealth for the protection of the public welfare, health, peace and morals of the people of the Commonwealth . . . and all of the provisions of this act shall be liberally construed for the accomplishment of this purpose."

To hold as defendants contend would directly defeat the purposes and effectiveness of the Liquor Code as a deterrent to tavern owners in serving a visibly intoxicated patron who might leave the tavern and injure himself or another person in an accident involving the use of or maintenance of a motor vehicle. We do not believe that the Pennsylvania legislature intended such a perversion of the No-fault Act. In ascertaining the intent of the legislature in enacting a statute, it must be presumed that the General Assembly does not intend an absurd result.[6]

Therefore, we hold that the provisions of the No-fault Act do not apply in this case and as a corollary plaintiff need not allege intentional conduct, as defined in the No-fault Act, to recover punitive damages.

Accordingly, we enter the following

### ORDER

And now, November 9, 1981, the motion for partial judgment on the pleadings filed by defendants, Leroy C. Reifsnyder and Jane D. Reifsnyder, is dismissed.

---

5. Liquor Code, supra, 47 P.S. §1-104.

6. 1 Pa.C.S.A. §1922(1) Appendix.