## Albright, Appellant, *v.* Metropolitan Life Insurance Company.

Argued October 2, 1940.

Before KELLER, P. J., CUN-
NINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and
HIRT, JJ.

*Albert M. Hankin,* for appellant.

*John Bishop,* with him *Owen B. Rhoads, Dechert,
Smith & Clark* and *Harry Cole Bates,* for appellee.

OPINION BY CUNNINGHAM, J., January 30, 1941:

This is an appeal from the entry of a judgment
n. o. v. in favor of the defendant insurance company
by the Municipal Court of Philadelphia County in an
action of assumpsit for $700, with interest, as the face
amount of an industrial life insurance policy, issued
October 1, 1934, by defendant upon the life of plaintiff's
daughter, Amelia Albright, then sixteen years of age.
The case was tried before BONNIWELL, J., without a
jury. Originally a finding was entered for the plaintiff

in the amount of $760.50, but subsequently defendant's motion for judgment in its favor, n. o. v. was granted, and plaintiff, who sued as the beneficiary under the policy, thereupon appealed to this court.

It was not questioned, under the pleadings, that the insured's mother, Mary Elizabeth Albright, paid the weekly premiums ($1.06 each) until October or November, 1936, and it was admitted in the statement of claim that the policy thereafter lapsed for nonpayment of subsequent premiums. The sole issue at the trial was whether or not the policy had been "revived" in April, 1937, as alleged by appellant, but denied by the defendant insurer. The death of the insured occurred on July 2, 1937.

Under the heading, "Revival," the policy provided: "Should this policy lapse for non-payment of premium, it may be revived, if not more than two years' premiums are due and a cash surrender value has not been paid, upon payment of *all* arrears and the *presentation of evidence, satisfactory to the company, of the insurability* of the insured." (Italics supplied.)

It was admitted in the affidavit of defense that less than two years' premiums were in arrears and that no cash surrender value had been paid.

In an effort to show compliance with the above provision, the insured's mother testified her daughter signed an application for revival on April 8, 1937, and gave it to one of the company's agents, DiGirlamo, along with the policy, the receipt book, and $1.84 in cash, for which payment he in turn gave the witness a "provisional receipt" signed by him, explaining that the difference between the amount then paid him and the regular weekly premium of $1.06 was "partly payment on the back payments that were due." Mrs. Albright also testified DiGirlamo called four or five times after that and on the last occasion, which was during the fifth week following his receipt of the money and the ap-

plication for revival, told her the policy had been revived but had been sent back because of a mistake and that "he would wait until the policy would come back" before accepting any further payments. She stated further that about the middle of May, 1937, an assistant manager of the insurance company, Mr. Petrucco, called and when asked about the revival said he would look it up in the office, but he later returned and said he was unable to find any trace of it.

Appellant, himself, testified that early in May 1937, he heard DiGirlamo tell Mrs. Albright, in refusing her offer to pay a premium, "that he would not take any more money on this policy until he brought the policy back from the company." Appellant also asserted he called at the company's 69th Street office in Philadelphia and saw Petrucco who advised him that the records of that office disclosed nothing concerning the receipt of any money or application for revival.

The pertinent paragraph of the "provisional receipt" given to Mrs. Albright by DiGirlamo when he received the payment of $1.84 reads: "...... Said sum is to be held for the account of said former insured without obligation on the part of the Metropolitan Life Insurance Company until said company has officially acted upon said application. If said application is approved, then said sum is to be applied to the payment of premiums ......"

No attempt was made by, or on behalf of, appellant to trace the $1.84 paid to DiGirlamo into the hands of the defendant company or those of any of its general officers, or to show that any evidence whatever of the "insurability of the insured" had been presented to the insurer.

The theory upon which appellant sought to recover the face amount of the policy was that the acts and declarations of DiGirlamo, testified to by the father and mother of the insured, constituted a waiver by the defendant company, through him as its agent, of per-

formance of the above quoted conditions precedent to the revival of a lapsed policy—payment of "all arrears" and "presentation of evidence, satisfactory to the company, of the insurability of the insured."

The answer to this contention is found in the following provision of the insurance contract: "This policy constitutes the entire agreement between the company and the insured and the holder and owner hereof. Its terms cannot be changed, or its conditions varied, except by the express agreement of the company evidenced by the signature of its president or secretary. · Therefore, agents (which term includes also managers, superintendents and assistant managers) are not authorized and have no power to make, alter, or discharge contracts, *to waive forfeitures or to receive premiums on policies more than thirty-one days in arrears, or to receipt for the same, and the payment to an agent of any such arrears shall be at the sole risk of the person making such payment* and shall not be credited as a payment upon the policy, whether receipt be given for such payment or not." (Italics supplied.)

Nor is there anything in the evidence introduced by the company which supplies the fatal deficiencies in appellant's proofs.

On behalf of the company, Mr. MacGarry, manager of its 69th Street office, testified that DiGirlamo had been one of its field representatives whose authority in connection with revival applications was limited to collecting arrears of premiums, receiving the applications and giving provisional receipts; that the records of DiGirlamo and of the company, introduced as defendant's exhibits, were the only pertinent records and contained no reference either to an application for revival of this policy or the receipt of $1.84; and that the policy had not in fact been revived.

Petrucco, referred to by Mrs. Albright, testified nothing was said to him about the revival of this policy when he called to see her on June 7, 1937, at which time

he was accompanied by DiGirlamo, whose records were then being checked due to the approaching termination of his agency, nor on June 21st, when he introduced a new agent, DiPietrontonio.

DiPietrontonio corroborated Petrucco's testimony to the effect that the latter introduced him to Mrs. Albright at her home but that she said nothing at that time, or at any time prior to the death of the insured, relative to a revival of the policy here in question.

Both MacGarry and Petrucco also testified they knew nothing concerning the present whereabouts of DiGirlamo. In *Mitchell v. Alta Life Insurance Company*, 116 Pa. Superior Ct. 490, 491, 176 A. 785, we approved the following statement: "...... the mere payment of the premium was not of itself sufficient to reinstate the policy. It was also necessary that the insured produce evidence of insurability satisfactory to defendant. There is no evidence whatever that the insured ever complied with this provision, and, since the burden was upon him to do so, we must presume, as a matter of law, that he did not." That statement is equally applicable to this case.

Moreover, there is no evidence upon this record that the defendant company ever received the $1.84 paid to DiGirlamo. None of the company's records where some note of its receipt would normally appear revealed any entry of it. In fact, it did not even appear in DiGirlamo's records.

The failure of the record in this case to show the receipt by the company of any part of the premiums in arrears and the presentation to it of any evidence of insurability distinguishes it from such cases as *Malchinsky v. Mutual Life Ins. Co.*, 90 Pa. Superior Ct. 1. There the insurance company had unconditionally accepted and retained the total amount of the premiums in arrears and had not demanded any additional evidence of insurability.

It is as true in this case as it was in *Pyrich v. Scranton Life Insurance Company*, 94 Pa. Superior Ct. 159, 167, that "There is not a particle of evidence indicating in any way that the company had waived, or intended to waive, either the limitation upon the authority of its agents contained in the policy, or the provisions written therein ......"

The cases chiefly relied upon by appellant are readily distinguishable from the case at bar. In *Barag, Admr. v. Metropolitan Life Insurance Company*, 130 Pa. Superior Ct. 213, 196 A. 558, the premium payment was indorsed in the premium receipt book and actually received by the company for there was an offer to return it. In *Smith v. State Mutual Life Assurance Company of Worcester*, 331 Pa. 1, 199 A. 358, an overdue premium was in fact accepted by the company which did not request evidence of insurability within a reasonable time, from which it was inferred that the production of such evidence had been waived. The case of *McGine v. State Mutual Benefit Society et al.*, 124 Pa. Superior Ct. 602, 189 A. 889, was one in which the home office of the insurance company received weekly premiums and retained them for a period of three weeks without demanding proof of insurability which was held to constitute a waiver of this requirement. The waiver held to have occurred in *Poles v. State Mutual Benefit Society*, 129 Pa. Superior Ct. 297, 195 A. 429, where the issue related to the automatic lapse of a policy, was predicated upon a course of conduct established by the company in accepting past due premiums.

If this case had been tried before a jury, it would have been the clear duty of the trial judge to give binding instructions in favor of the defendant upon the whole record. The final action of the court below was correct.

Judgment affirmed.