436 A.2d 690

**Elizabeth E. McCLOSKEY**

v.

**NEW YORK LIFE INSURANCE COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued April 16, 1980.

Filed Oct. 30, 1981.

John H. Scott, Jr., Pittsburgh, for appellant.

Robert B. Truel, Pittsburgh, for appellee.

Before CAVANAUGH, HOFFMAN and VAN der VOORT, JJ.

HOFFMAN, Judge:

Appellant contends, *inter alia,* that it is entitled to a judgment n. o. v. because the insurance policy had been fraudulently obtained. We agree and, accordingly, reverse the judgment of the court below and remand for entry of judgment n. o. v. in favor of appellant.[1]

In early December, 1974, appellee's husband, Robert J. McCloskey, Jr., applied to appellant for a $25,000 life insurance policy and completed a medical questionnaire designed to reveal any history of various medical conditions including diabetes and heart disease. Mr. McCloskey answered each question in the negative.[2] He also submitted to a paramedi-

---

1. Because of our disposition of this case, we need not reach appellant's alternative contentions that the lower court erred in denying its motions for a compulsory nonsuit or a new trial.

2. In particular, Mr. McCloskey answered "no" to each of the following questions:
   2. Have you ever consulted a physician or practitioner for or, so far as you know, ever had or been treated for
   . . . .
   (b) rheumatic fever, heart murmur, heart attack, angina pectoris, stroke, chest pain, shortness of breath, palpitation, irregular pulse, elevated blood pressure, varicose veins or any other disorder of the heart or blood vessels?
   . . . .
   (d) duodenal or gastric ulcer, nervous stomach, indigestion, appendicitis, colitis, diverticulitis, gall bladder disease, hemorrhoids, bleeding from the intestinal tract or any other disease of the stomach, liver, intestines or rectum?
   (e) nephritis, kidney stone or colic; sugar, albumin, blood or pus in urine; or any other disorder of the prostrate, bladder, kidney or genito-urinary system?
   . . . .
   (j) cancer, cyst, tumor, hernia of any kind, anemia or other blood disorder; syphilis, diabetes, disease of the thyroid or any other gland; dermatitis, eczema or other skin disease?
   . . . .
   3. Have you
   (a) ever had a surgical operation?
   (b) ever been advised to have any surgical operation which has not been performed?

cal examination which disclosed that he was overweight.[3] Appellant subsequently issued a policy with a special rate classification requiring appellee's husband to pay a premium higher than that of a standard policy. He accepted the policy, and paid the first year's premium. Mr. McCloskey died within a month after the issuance of the policy, whereupon appellee submitted a claim for the face value of the policy. After an investigation, appellant denied appellee's claim and, instead, tendered the initial premium with interest. Appellee rejected that offer, commencing this action in assumpsit for the proceeds of the policy.

At trial, appellant defended on the ground that appellee's husband has fraudulently obtained the policy by misrepresenting his medical condition in the application for insurance. Appellant introduced evidence that Mr. McCloskey did, in fact, suffer from diabetes and that he had suffered a heart attack prior to applying for the policy and that he had undergone a variety of diagnostic tests, a series of x-rays, and a number of electrocardiograms within the period relevant to the application. Although appellee disputed her husband's knowledge of his medical condition, she contended primarily that appellant had not relied upon her husband's misrepresentations when it issued the rated policy. The jury returned a $25,000 verdict for appellee. Following the denial of post-trial motions and entry of judgment, appellant

(c) within the last 5 years, had any x-ray, electrocardiogram or other diagnostic procedure ordered by a physician or practitioner?
. . . .
(g) ever applied for, or ever received, benefits or a pension because of accident, sickness or disability?
4. Other than as stated in your answers to the preceding questions, have you, within the last 5 years, so far as you know,
(a) had any sickness, disease or injury?
(b) been admitted, to or advised to be admitted to, a hospital or similar institution?
(c) consulted any physician or practitioner for any reason, including routine or checkup examination?
. . . .
6. Do you have any reason to believe you are not in good health at the present time?

3. Mr. McCloskey, who was five-feet-ten-inches tall, weighed 238 pounds.

took this appeal challenging the denial of its motion for judgment n. o. v.

In reviewing an order denying judgment n. o. v., we must view the evidence, together with all reasonable inferences therefrom, in the light most favorable to appellee as the verdict winner. *See e. g., Lynch v. Metropolitan Life Insurance Co.,* 427 Pa. 419, 423, 235 A.2d 406, 409 (1967). *See also Atkins v. Urban Redevelopment Authority of Pittsburgh,* 489 Pa. 344, 414 A.2d 100 (1980). Judgment n. o. v. should be entered when the facts are such that no two reasonable persons could disagree that the verdict was improper. *See e. g., Cummings v. Borough of Nazareth,* 427 Pa. 14, 25–26, 233 A.2d 874, 880–81 (1967); *Bottorf v. Waltz,* 245 Pa.Super. 139, 142–44, 369 A.2d 332, 334 (1976). Accordingly, when the lower court would be warranted in giving binding instructions to the jury, *see e. g., Connelly v. Ziegler,* 251 Pa.Super. 521, 523–24, 380 A.2d 902, 903 (1977); *Albright v. Metropolitan Life Insurance Co.,* 143 Pa.Super. 158, 164, 17 A.2d 709, 711 (1941), or when the evidence is insufficient to sustain a verdict against the losing party, *see e. g., Fitzgerald v. McCutcheon,* 270 Pa.Super. 102, 105–06, 410 A.2d 1270, 1271 (1979); *Szumski v. Lehman Homes, Inc.,* 267 Pa.Super. 478, 480–81, 406 A.2d 1142, 1143 (1979); *Trawick v. Nationwide Mutual Insurance Co.,* 242 Pa.Super. 271, 274–75, 363 A.2d 1265, 1266–67 (1965), the court should enter a judgment n. o. v.

Appellant contends that the uncontroverted testimony and documentary evidence established, as a matter of law, that appellee's husband had fraudulently obtained the life insurance policy by misrepresenting his medical condition in the application for insurance. To avoid its obligations under the life insurance policy, appellant had to prove that: (1) statements of appellee's husband in his insurance application were false; (2) their subject matter was material to the risk assumed by appellant; and (3) he knew his statements to be false and made them in bad faith. *See e. g., Lynch v. Metropolitan Life Insurance Co., supra,* 427 Pa. at 424, 235 A.2d at 409; *Underwood v. Prudential Insurance*

*Co.*, 241 Pa.Super. 27, 31, 359 A.2d 422, 424–25 (1976). Additionally appellant must establish that it relied upon the misstatements in issuing the policy. *Kizirian v. United Benefit Life Insurance Co.*, 383 Pa. 515, 519, 119 A.2d 47, 49–50 (1956), quoting *Evans v. Penn Mutual Life Insurance Co.*, 322 Pa. 547, 553, 186 A. 133, 138 (1936). The questions propounded in the application for insurance, see note 2, *supra*, clearly were material to the risk assumed by appellant. *See, e. g., Shafer v. John Hancock Mutual Life Insurance Co.*, 410 Pa. 394, 189 A.2d 234 (1963); *Kizirian v. United Benefit Life Insurance Co., supra.* The uncontroverted testimony and documentary evidence established that Mr. McCloskey answered the questions falsely. Moreover, from that same evidence, we can infer that he knowingly and in bad faith misrepresented his medical condition when answering the medical questionaire.[4] *See Platt v. John Hancock Mutual Life Insurance Co.*, 361 Pa. 652, 653–54, 66 A.2d 266 (1949) (when undisputed hospital records established numerous admissions to hospital, diagnosis and treatment for tuberculosis, beneficiary precluded from recovering under life insurance policy; judgment n. o. v. for insurer); *Freedman v. Mutual Life Insurance Co. of New York*, 342 Pa. 404, 409, 21 A.2d 81, 84 (1941) ("[W]here it is established by uncontradicted documentary evidence that the insured has consulted physicians so frequently, or undergone medical or surgical treatment so recently, or of such a serious nature, that a person of ordinary intelligence could not have forgotten these incidents in answering a direct and pointed question in an application for insurance, bad faith may be inferred as a

4. The undisputed evidence established that Mr. McCloskey: (1) wore a diabetes bracelet; (2) followed a diabetic diet; (3) received oral anti-diabetic medications, and, eventually, insulin injections; (4) consulted several doctors and had been hospitalized concerning his diabetes; (5) had at least twenty-six electrocardiograms, and a variety of other diagnostic studies including blood tests, urinalyses, a liver scan, barium enema, and several x-rays; (6) had a prescription for nitroglycerine tablets; (7) occasionally complained of chest pains and shortness of breath; (8) had been hospitalized for a liver ailment and a myocardial infarction; (9) signed two different disability insurance claims forms, each of which reciting that he had suffered a heart attack; and (10) had suffered from drug-induced hepatitis.

matter of law if the insured denies in his answer that any physician has been consulted, or medical or surgical treatment has been received during the period of inquiry."). *See also Shafer v. John Hancock Mutual Life Insurance Co., supra,* 410 Pa. at 399, 189 A.2d at 236; *Evans v. Penn Mutual Life Insurance Co., supra,* 322 Pa. at 560–61, 186 A. at 141–42. Consequently, this case should not have been submitted to the jury unless there was sufficient evidence to permit the jury to infer that appellant had not relied upon the misrepresentations when it issued the policy.[5]

■ Appellee contends, and the lower court held, that the jury could reasonably infer appellant's lack of reliance from the facts that appellee's husband habitually wore a bracelet disclosing his diabetes and that appellant had admittedly issued a rated policy because Mr. McCloskey had been in poor health. We disagree. Assuming, *arguendo,* that the jury could reasonably infer that the paramedic discovered that Mr. McCloskey was diabetic and reported that discovery to appellant,[6] the jury could not possibly have inferred that appellant had also learned of Mr. McCloskey's *entire* medical history. Nor could such an inference be drawn from the fact that appellant had issued a rated policy. The only evidence presented by appellee of appellant's knowledge of

5. Although appellee presented evidence that her husband had not been *told* that he had a heart attack, the issue still could not be submitted to the jury because of the overwhelming evidence, see note 4, *supra,* that he had grossly misrepresented the details of his medical condition in answering the medical questionaire. Mr. McCloskey's glaring misrepresentations of his treatments would be sufficient to permit appellant to avoid its obligations under the policy.

6. As appellee acknowledges in her brief, because the application for insurance in this case stated that no medical examiner was authorized to waive any of appellant's rights, the paramedic's knowledge "will not estop the [appellant], unless such knowledge was brought to the attention of the [appellant] and acquiesced in by the [appellant] or its authorized officers." *Crawford v. Manhattan Life Insurance Co. of New York,* 208 Pa.Super. 150, 163, 221 A.2d 877, 885 (1966), citing *Matovich v. Mutual Benefit Health and Accident Association,* 157 Pa.Super. 604, 43 A.2d 648 (1945). *Accord, Celley v. Mutual Benefit Health and Accident Association,* 229 Pa.Super. 475, 324 A.2d 430 (1974).

Mr. McCloskey's medical condition was the testimony of his daughter that the agent who delivered the policy to him told that "he was a special rating due to poor health." No evidence whatsoever was introduced as to what the agent had meant by "poor health." Regardless of whether the policy was rated due to diabetes, as asserted by appellee at trial, or because of obesity, as asserted by appellant at trial, there was no basis other than sheer conjecture for the jury to conclude that appellant had become aware of Mr. McCloskey's *entire* medical history. Because "[a] verdict will not be sustained which is based on conjecture or surmise or guess," *Warden v. Lyons Transportation Lines, Inc.*, 432 Pa. 495, 498, 248 A.2d 313, 314 (1968) (quotations omitted), we cannot agree with the lower court that there was sufficient evidence from which "the jury could properly have concluded that the insurance company knew of [Mr. McCloskey's] medical condition and chose [, nevertheless, to issue a policy and] to charge a higher premium rather than to deny the insurance application." Opinion of the Lower Court at 3. Accordingly, we hold that the issue of appellant's reliance upon the misstatements of appellee's husband should not have been submitted to the jury, and, therefore, appellant is entitled to judgment n. o. v.

Judgment reversed and case remanded for entry of judgment n. o. v. in favor of appellant, New York Life Insurance Company.

VAN der VOORT, J., files a dissenting opinion.

VAN der VOORT, Judge, dissenting:

On the basis of the decedent's application and the medical examination given the decedent by the medical representative of the appellant, the decedent was offered a so-called "rated" policy at a premium substantially double the appellant's charge for an unrated policy. When the policy was delivered to the decedent, he was told by the appellant's representative who delivered it that he was being offered a rated policy at an increased premium because of his "poor health." He accepted the rated policy and paid the first year premium.

On this appeal, the appellant has renewed its Motion for a Judgment N.O.V. or a New Trial. In passing upon the propriety of entering a Judgment N.O.V., the reviewing Court must view the evidence, together with all reasonable inferences therefrom in the light most favorable to the verdict-winner. *Lynch v. Metropolitan Life Insurance Company*, 427 Pa. 418, 423, 235 A.2d 406, 409 (1967).

The insurance policy issued to the decedent states that the decedent's statements in the application were representations and not warranties. It therefore becomes incumbent upon the appellant to establish: (1) that the statements of the decedent in his application were false, (2) that their subject matter was material to the risk, and (3) that the decedent must have known them to be false and made them with the intent to deceive. *Lynch*, 427 Pa. at 424, 235 A.2d 406.

It is evident that the decedent's answers to the medical questions were material to the risk and were contrary to the facts of his medical background. The evidence is also undisputed that he knew he had diabetes, as evidenced by his diabetic bracelet. However, members of his family testified that he had not been told that he had a heart condition. I believe it was for the jury to determine whether he had knowingly misrepresented his heart condition.

The central issue before us is whether credible evidence was offered from which the jury could conclude that the appellant had not been deceived by the medical application, but had acted upon other information which disclosed to it the true situation when it issued the policy. The appellee contends that the fact that the appellant issued a rated policy at a substantially higher premium than normal was evidence that it knew the decedent's condition and preferred to assume the risk at a higher premium rather than decline the application. There was evidence that the decedent always wore his diabetic bracelet and his daughter testified that he was wearing it when he took his medical examination for the policy. There was no evidence as to whether the examining doctor took note of the bracelet and reported it to

the appellant or the diabetes which it indicated, but it is a permissible inference that he did so in view of the fact that the appellant would only issue the policy on a rated basis. It is also a reasonable inference that the medical examiner discovered the diabetic condition of the decedent in the physical examination. This finds some confirmation in the testimony that the agent who delivered the policy to the decedent explained the reason for the rating and the higher premium as the decedent's "poor health."

The appellee contends that unless the appellant had knowledge of the decedent's condition, it would have had no basis for issuing a rated policy because the decedent revealed no medical history which would call for a rating. The appellant explains its rating of the policy as due to the decedent's obesity, its medical examination having revealed the decedent to be a man 5' 10" in height and weighing 238 lbs.

Whether the appellant relied upon the misinformation in the insurance application or whether it had learned of the decedent's condition and decided to assume the risk at an upgraded premium was a disputed issue of fact for the jury. In view of our obligation to view the evidence and all reasonable inferences from it in the light most favorable to the verdict winner, I must conclude that there is no basis for reversing the Judgment and entering Judgment N.O.V. in favor of appellants.

The appellant bases its claim for a new trial on the grounds (1) that the appellee did not offer the insurance policy in evidence during her case in chief, and (2) that the trial court limited the appellant's cross-examination of the appellee during her case in chief to the issues raised in her direct examination. There is no merit in either argument.

The policy was not produced during appellee's case in chief because it had previously been turned over to the appellant who offered it in evidence during its defense. The appellant had the insurance policy in its possession throughout the appellee's case and suffered no harm from the fact that it, rather than the appellee, introduced the policy in evidence.

While it is generally true that a party may be cross-examined as to any matter relevant and material to the case, it is equally true that a defendant should not be permitted to put in its defense under cover of cross-examination of the plaintiff. *Agate v. Dunlevy*, 398 Pa. 26, 30, 156 A.2d 530, 532 (1959). This is what was being attempted by the cross-examination. The appellee remained available to testify as on cross-examination in the appellant's case, but was not called.

Therefore, I respectfully dissent and would affirm the judgment.