603 A.2d 618

**RESOLUTION TRUST CORPORATION, as Receiver For First Federal Savings & Loan Association of Pittsburgh**

**v.**

**URBAN REDEVELOPMENT AUTHORITY OF PITTSBURGH and Verex Assurance, Inc.**

**Appeal of VEREX ASSURANCE, INC.**

Superior Court of Pennsylvania.

Argued Sept. 11, 1991.

Filed Feb. 14, 1992.

352

Jeffrey T. Morris, Pittsburgh, for appellant.

John Lucas, Pittsburgh, for Resolution Trust Corp., appellee.

Scott D. Cessar, Pittsburgh, for Urban Redevelopment, appellee.

Before WIEAND, CIRILLO and MONTGOMERY, JJ.

WIEAND, Judge:

May the corporate insurer of a mortgage rescind its contract of guaranty after it has been determined that a material misrepresentation was made by the borrower and repeated by the lender in its application for insurance coverage? The trial court held that such a misrepresentation did not constitute a defense to the lender's claim and entered partial summary judgment against the insurer of the debt. For the reasons which follow, we reverse.

In order to help alleviate economic blight and promote economic development in the City of Pittsburgh, the Urban Redevelopment Authority of Pittsburgh (U.R.A.) instituted a program to assist persons of low income in the financing, acquisition, construction and rehabilitation of residential housing located in certain targeted areas in the City of Pittsburgh. In 1982, First Federal Savings & Loan Associa-

tion of Pittsburgh [1] entered into an agreement with the U.R.A. by the terms of which First Federal became a participating lender in the U.R.A. program. Under this program, participating lenders, such as First Federal, were required to maintain both pool mortgage insurance and primary mortgage insurance for each loan. This insurance was intended to protect the mortgage holder, U.R.A., in the event of default by the borrower.

On May 11, 1983, Deborah D. Foster made application to First Federal for a loan under the U.R.A. program in the amount of $50,000 for the purchase and rehabilitation of a house in Pittsburgh. The loan application was completed by a representative of First Federal during an interview with Foster and was signed by Foster. In addition to questions concerning outstanding judgments and prior foreclosure actions, Foster was asked: "Is any part of the down payment borrowed?" Foster replied in the negative, and her answer was recorded on the application by representatives of First Federal who prepared it. The application, therefore, reflected that Foster would make a down payment of three thousand ($3,000) dollars and that no part thereof consisted of borrowed funds. This application was approved by U.R.A., and the same information appeared in First Federal's application to Verex Assurance Company (Verex) for pool and primary mortgage insurance. Verex approved the application and issued certificates insuring the Foster loan in the amount of fifty thousand ($50,000) dollars. The loan and the mortgage securing the loan were thereafter assigned to the U.R.A.

When Foster promptly defaulted on the loan, a claim was made against Verex in the amount of $86,507.54. Gregg Henning, a Verex claims representative, contacted Deborah Foster by telephone and discussed with her the real estate transaction which had spawned the mortgage loan. He reported that Foster told him she had borrowed three

1. First Federal has since been acquired by the Resolution Trust Corporation which has been substituted as the named plaintiff in this case.

thousand ($3,000) dollars from Equibank to make the down payment.[2] Verex thereafter gave notice to U.R.A. that it intended to rescind its certificate of insurance because of the misrepresentation which Foster had made on the loan application. U.R.A. requested that First Federal repurchase the Foster loan. First Federal then filed an action for declaratory judgment against Verex to obtain an adjudication of its rights against the insurer. In response to a motion by First Federal, the trial court entered a partial summary judgment which precluded Verex from asserting Foster's alleged fraud as a defense to First Federal's claim.

■ As a general rule, an appeal will lie only from a final order unless an interlocutory appeal is permitted by statute or rule. *Fried v. Fried,* 509 Pa. 89, 93, 501 A.2d 211, 213 (1985); *Motheral v. Burkhart,* 400 Pa.Super. 408, 414, 583 A.2d 1180, 1183 (1990). The Supreme Court has defined a final order as one which ends the litigation or disposes of the entire case. Conversely, an order is interlocutory and not final unless it effectively puts a litigant "out of court." *T.C.R. Realty, Inc. v. Cox,* 472 Pa. 331, 337, 372 A.2d 721, 724 (1977). This standard of finality, however, has been subjected to exceptions.

In *Posternack v. American Casualty Company of Reading,* 421 Pa. 21, 218 A.2d 350 (1966), an action was brought to recover a fire loss from the defendant-insurer. During the pendency of the action, the defendant-insurer filed a petition requesting leave to amend its answer to include as new matter the defenses of res judicata and collateral estoppel because of an action by plaintiff to recover the same loss from a different insurer. In denying a motion to quash an appeal from this order, the Supreme Court said: "The order involved effectively precludes proof at trial of what might possibly be a complete defense to the cause sued upon. As to this defense, at least, the order appealed from puts the defendant 'out of court'. It is, therefore, an appealable order." *Id.,* 421 Pa. at 24, 218 A.2d at 351.

2. During deposition testimony, Foster later said she had borrowed only five hundred ($500) dollars of the down payment.

*Posternack* was followed by *Grota v. LaBoccetta*, 425 Pa. 620, 230 A.2d 206 (1967). There, the Supreme Court found final a trial court order which had denied defendants leave to amend their pleading to include the affirmative defense of release. The *Grota* court said:

> [T]he plaintiff submits that the appeal is out of order and should be quashed on the basis that the order to which objection was made was merely interlocutory. We cannot accept this argument. The defense sought to be injected by the amendment was an affirmative one and thus had to be pleaded, on the risk otherwise that it might be deemed to have been waived. *Therefore, when the Court held that the amendment was not pleadable, the petitioners were, on that feature of the case, put out of court.* From this it inevitably followed that the order below became final and appealable.

*Id.*, 425 Pa. at 623, 230 A.2d at 207 (emphasis added). See also: *Higgs v. New York Fire Ins. Co.*, 176 Pa.Super. 310, 106 A.2d 860 (1954).

The Supreme Court had an opportunity to overrule *Posternack* and *Grota* in *Bruno v. Elitzky*, 515 Pa. 47, 526 A.2d 781 (1987), but elected not to do so. Instead, the Court sought to distinguish *Posternack* and *Grota*. In *Bruno*, the order being appealed was a sanction order which had stricken new matter contained in defendant's new matter. The Supreme Court held the order interlocutory and not immediately appealable. Writing in dissent, Justice Hutchinson observed that, as in *Posternack* and *Grota*, the trial court's order had deprived the defendant finally of the opportunity to assert an affirmative defense. With respect to this dissent, the majority observed via footnote as follows:

> Mr. Justice Hutchinson has entered a dissent groping with the viability of *Grota v. LaBoccetta*, 425 Pa. 620, 230 A.2d 206 (1967), which dealt with the substantive merits of an affirmative defense. By contrast, disposition of the case under review is based on the issue of a sanction order for failure to respond to interrogatories.

*This qualitative difference clearly distinguishes the two cases.*

*Id.* 515 Pa. at 50 n. 1, 526 A.2d at 782 n. 1 (emphasis added).

The incongruity of these decisions was noted and commented upon by the Commonwealth Court in *Commonwealth, Department of Transportation v. Kmetz,* 129 Pa. Cmwlth.Ct. 97, 564 A.2d 1040 (1989) where the Court observed:

In other words, there is no longer a requirement that an order put a *defendant* out of court before that order is final and appealable. Rather, after *Posternack* and *Grota,* appellate review is proper if one of the defendant's *defenses* is put out of court. But the determination of finality does not end there. *Bruno* requires that the determination also include inquiry into *how* the defense was put out of court. Accordingly, even though two orders may have identical impact upon a defendant's ability to prove an affirmative defense at time of trial, an order striking untimely new matter is final but an order striking new matter as a discovery sanction is interlocutory. This standard is incongruous.

*Id.,* 129 Pa.Cmwlth.Ct. at 103, 564 A.2d at 1043 (emphasis in original).

Although we are reluctant to entertain appeals from orders which do not decide actions fully and finally, *Posternack* and *Grota,* having never been overruled, constitute the law as it presently exists in this Commonwealth. Pursuant to these rulings, the order entered by the trial court in the instant case is appealable, for the effect of the order is to determine finally that fraudulent misrepresentations made by the borrower may not be asserted as a defense in this action to impose liability on the insurer pursuant to its contract.

A motion for summary judgment may be granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that no genuine issue as to any material fact exists and that the moving party is entitled to judgment as a matter of law. *Davis v. Pennzoil Co.,* 438 Pa. 194, 264 A.2d 597 (1970).

It is the general rule in Pennsylvania that, in order to rescind an insurance policy based on a fraudulent representation, "the insurer has the burden of proving that the statements made by an applicant on the application were false and material and that the applicant must have known that the statements were false and made them in bad faith." *Piccinini v. Teachers Protective Mut. Life Ins. Co.*, 316 Pa.Super. 519, 528, 463 A.2d 1017, 1023 (1983). See also: *Lynch v. Metropolitan Life Insurance Company*, 427 Pa. 418, 235 A.2d 406 (1967); *Travellers Ins. Co. v. Heppenstall Co.*, 360 Pa. 433, 61 A.2d 809 (1948); *Bailey v. Pacific Mutual Life Insurance of California*, 336 Pa. 62, 6 A.2d 770 (1939); *Evans v. Pennsylvania Mutual Life Insurance Co. of Philadelphia*, 322 Pa. 547, 186 A. 133 (1936); *A.G. Allebach, Inc. v. Hurley*, 373 Pa.Super. 41, 540 A.2d 289 (1988); *McCloskey v. New York Life Insurance Company*, 292 Pa.Super. 1, 436 A.2d 690 (1981); *Underwood v. Prudential Insurance Company of America*, 241 Pa.Super. 27, 359 A.2d 422 (1976).

■ Whether Foster fraudulently misrepresented the source of the money used to make her down payment is a question of fact to be determined by the fact finder upon a trial of the cause. At the present stage of the proceedings, the issue cannot be determined conclusively. The trial court concluded, however, that even if Foster's misrepresentation had been fraudulent, Verex could not for that reason rescind its contract of insurance. The court's ruling was based upon its determination that First Federal was innocent of any fraud and could not be charged therewith. For the reasons which follow, we conclude that the trial court erred.

Although this precise issue has not been decided previously by the appellate courts of this Commonwealth, those courts which have considered it have uniformly held that a policy guaranteeing a mortgage loan can be rescinded on the basis of a misrepresentation made by the mortgagor as to his or her financial circumstances, even though the mortgagee-lending institution did not have actual knowl-

edge of the misrepresentation, where the misrepresentation was material and was submitted by the lending institution with its application for insurance. See: *Firstier Mortgage Company v. Investors Mortgage Insurance Co.*, 930 F.2d 1508 (10th Cir.1991); *Verex Assurance, Inc. v. John Hanson Savings and Loan, Inc.*, 816 F.2d 1296 (9th Cir.1987); *Twin City Bank v. Verex Assurance, Inc.*, 733 F.Supp. 67 (E.D.Ark.1990); *TCF Mortgage Corporation v. Verex Assurance, Inc.*, 709 F.Supp. 164 (D.Minn.1989); *In re Epic Mortgage Insurance Litigation*, 701 F.Supp. 1192 (E.D.Va. 1988); *Mountain Security Savings Bank v. United Guaranty Residential Ins. Co.*, 678 F.Supp. 610 (W.D.Va.1987); *United Guarantee Residential Insurance Corp. of North Carolina v. American Pioneer Savings Bank*, 655 F.Supp. 165 (S.D.Fla.1987). In such cases, the insurance carrier has no duty to investigate the accuracy of the facts as set forth in the application, and the good faith or lack of knowledge of the misrepresentations by the mortgagee-lending institution is irrelevant. *Twin City Bank v. Verex Assurance, Inc., supra.* This is as it should be, for the mortgagee-lending institution is in a better position to ascertain the truth of the borrower's representations than the mortgage insurance carrier which has no direct dealings with the borrower.

In some of the cases considered by the courts, the policy of mortgage insurance contained a provision that the insurer relied totally on the information supplied by the insured mortgagee and that facts submitted to it were to be deemed representations by the insured mortgagee. See, e.g.: *United Guarantee Residential Insurance Corp. of North Carolina v. American Pioneer Savings Bank, supra; In re Epic Mortgage Insurance Litigation, supra; Mountain Security Savings Bank v. United Guaranty Residential Insurance Co., supra.* A similar policy provision has not been pleaded in the instant case. Instead, Verex has pleaded and produced evidence that because of the nature of the tripartite relationship existing among borrower, lender and insurer, it is the custom in the trade for the parties to

understand that the insurer relies upon representations made by the lender even though the basis therefor may have originated in statements made orally or in writing by the borrower. It is understood throughout the industry, appellant argues, that if the information received by the mortgage insurer is not accurate and complete, there is no coverage. This enables the mortgage insurance to be purchased for a lower premium than if a charge had to be made to verify information submitted by the lender to the insurer. *In re Epic Mortgage Insurance Litigation, supra* at 1238.

Whether Verex's assertion of a custom in the trade is factually correct is not presently before us. Suffice it to say that it cannot be decided as a matter of law. We conclude, therefore, that Verex must be given an opportunity to present its defense upon a trial of the cause. A jury could find that a misrepresentation regarding the borrower's credit and cash equity was material to the insurer's determination of the probability of repayment. See: *Verex Assurance, Inc. v. John Hanson Savings and Loan, Inc., supra.* If this information were false, therefore, appellant may well be entitled to rescind its policy providing mortgage guaranty insurance. Under such circumstances, appellant's right of rescission would not be defeated merely because the insured lender was unaware that the information which it had supplied to the insurer was false.

Reversed and remanded for additional proceedings consistent with this opinion. Jurisdiction is not retained.