**MT. AIRY INSURANCE CO., Plaintiff,**

v.

**THOMAS E. ANGST & ASSOCIATES, P.C., et al., Defendants.**

**Civil Action No. 95–3106.**

United States District Court, E.D. Pennsylvania.

Jan. 22, 1997.

Jeffrey B. Albert, McKissock and Hoffman, P.C., Philadelphia, PA, Jeffrey A. Goldwater, Paul Parker, Bollinger, Ruberry and Garvey, Chicago, IL, for plaintiff.

David C. Onorato, Landis, Kerns and Associates, Lansdale, PA, for defendants.

### MEMORANDUM

LOWELL A. REED, Jr., District Judge.

Thomas E. Angst ("Angst"), the president of Thomas E. Angst & Associates P.C., a law firm, completed and submitted to Mt. Airy Insurance Company ("Mt.Airy") an application for professional liability insurance on behalf of the professional corporation in May 1994. In response to a question on the application form, Angst indicated that the law firm knew of no professional liability claims or suits made against any lawyer in the firm and that no lawyer in the firm knew of any circumstances, acts, errors or omissions that could result in a professional liability claim against any attorney in the firm. Mt. Airy alleges that at the time Angst submitted the application on behalf of the law firm, already he had misappropriated and stolen $148,869.42 from the estate of William J. Glosser ("Glosser"), a client of Angst. Angst died in September 1994, before Mt. Airy filed its complaint seeking a declaratory judgment that it is entitled to rescind the policy of professional liability insurance issued by it to Thomas E. Angst & Associates, P.C. Pending before this Court is the motion for summary judgment of Mt. Airy. Upon consideration of the motion of plaintiff and the response of defendants thereto, and for the following reasons, the motion for summary judgment will be granted.

### LEGAL STANDARD

The standard for a summary judgment motion in federal court is set forth in Rule 56 of the Federal Rules of Civil Procedure. Rule 56(c) states that:

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). In addition, a dispute over a material fact must be "genuine," *i.e.*, the evidence must be such "that a reasonable jury could return a verdict in favor of the non-moving party." *Id.*

The moving party has the initial burden to identify evidence that it believes shows an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing'—that is, pointing out to the District Court—that there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. at 2554. If the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The non-moving party may not rely merely upon bare assertions, conclusory allegations or suspicions. *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir.1982). The court must consider the evidence of the non-moving party as true, drawing all justifiable inferences arising from the evidence in favor of the nonmoving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14. Yet, if the evidence of the non-moving party is "merely colorable," or is "not significantly probative," summary judgment may be granted. *Id.* at 249–50, 106 S.Ct. at 2510–11. To defeat the motion for summary judgment, the non-moving party must offer specific facts contradicting those set forth by the movant, thereby showing that there is a genuine issue for trial. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188–89, 111 L.Ed.2d 695 (1990).

### DISCUSSION

To rescind an insurance policy due to misrepresentation in the application, the insurer must prove the following:

(1) the statements made by the applicant were false;

(2) the statements made were material;

(3) the applicant knew the statements were false and made them in bad faith; and

(4) the insurer relied on the statements in issuing the policy.

*McGill v. Surety Life Ins. Co.*, No. CIV. A.89–1557, 1990 WL 50500, at *1 (E.D.Pa. Apr.18, 1990); *Piccinini v. Teachers Protective Mut. Life Ins. Co.*, 316 Pa.Super. 519, 463 A.2d 1017, 1023–24 (1983).

### A. Dead Man's Act

In support of its motion for summary judgment, Mt. Airy relies upon the affidavit of Lucy Aeillo, the supervisor of underwriters at the time Angst submitted the application, and the deposition of Dawne Ney, the executrix of the estate of Glosser. Defendants contend that, because Thomas Angst is deceased, the Dead Man's Act precludes this Court from considering the contents of these sworn statements.

■ The Dead Man's Act in Pennsylvania ("the Act") provides, in pertinent part:

Except as otherwise provided in this subchapter, in any civil action or proceeding, where any party to a thing or contract in action is dead, or has been adjudged a lunatic and his right thereto or therein has passed, either by his own act or by the act of the law, to a party on the record who represents his interest in the subject in controversy, neither any surviving or remaining party to such thing or contract, nor any other person whose interest shall be adverse to the said right of such deceased or lunatic party, shall be a competent witness to any matter occurring before the death of said party or the adjudication of his lunacy....

42 Pa. Cons.Stat. Ann. § 5930. The Act prevents the injustice that may result from permitting the surviving party to an occurrence to testify favorably to himself and adversely to the decedent because the decedent's representative is unable to refute such testimony. *See Keegan v. Fahnestock & Co.*, No. CIV.A.95–5998, 1996 WL 530000, at *5 (E.D.Pa. Sept.16, 1996). The Dead Man's Act is an exception to the general rule of evidence in the federal courts and in this Commonwealth that every person is compe-

tent to testify as a witness. *See* Fed.R.Evid. 601; 42 Pa. Cons.Stat. Ann. § 5921; *see also Larkin v. Metz*, 398 Pa.Super. 235, 580 A.2d 1150, 1152 (1990). Because competency of a witness is the rule and incompetency the exception, commentators have often criticized the Dead Man's Act and courts construe its application narrowly. 27 Wright & Gold Federal Practice & Procedure: Evidence § 6005 (1990).

■ The express language of the Act speaks to any party to a thing or contract. *See* 42 Pa. Cons.Stat. Ann. § 5930. Angst submitted the application for professional liability insurance in his capacity as president of the law firm on behalf of the law firm, which is a Pennsylvania professional corporation. *See* Motion for summary judgment, Exhibit A. It is the alleged misrepresentation(s) of the law firm applicant upon which Mt. Airy bases this action and the within motion. Neither Angst nor his estate is a party to the contract or this action; rather, the law firm Thomas E. Angst & Associates, P.C. is the named insured as well as the named party in the lawsuit. *See Pittsburgh Die Sinkers Lodge No. 50 of the Int'l Die Sinkers' Conference v. Pittsburgh Forgings Co.*, 255 F.Supp. 142, 145 (W.D.Pa.1966) (refusing to exclude testimony of plant manager pursuant to Dead Man's Act where party to contract was corporation). In the case at bar, the interest of the witness is adverse to the corporation, as the named insured under the insurance policy, and the corporation is not dead, thereby rendering inapplicable the Dead Man's Act. *See id.*, 580 A.2d at 1153.

■ Moreover, the Act does not exclude the testimony of agents and employees of a surviving party to a transaction. *See Cipriani v. Sun Life Ins. Co. of America*, 757 F.2d 78, 82 (3d Cir.1985). Accordingly, Lucy Aeillo, as an employee or agent of Mt. Airy, is not incompetent to testify by virtue of the Dead Man's Act. Therefore, I will consider the sworn statements of Dawne Ney and Lucy Aeillo to resolve the motion for summary judgment. Finally, the Act applies only to oral testimony. *See Larkin*, 580 A.2d at 1153. Consequently, the cancelled checks offered by Mt. Airy are not deemed incompe-

tent by the Act, and I shall consider this documentary evidence as well. *Id.* (finding that the trial court erred when it precluded the admission of receipts and canceled checks pursuant to the Dead Man's Act.)

### B. *Knowledge and Reliance*

■ Defendants contend that summary judgment must be denied because there exist genuine issues of material fact with regard to the third and fourth elements of the cause of action—that Angst knew the statements were false and made them in bad faith and that the Mt. Airy relied on the statements in issuing the policy. Defendants argue that the record contains no statements or admissions by Angst confirming that he misappropriated funds from the estate of Glosser. Despite the lack of direct proof of the knowledge of Angst, I infer from the overwhelming evidence of record that Angst knew of the misappropriation of funds at the time he completed and submitted the application for insurance and made the representations on the application in bad faith. *See McCloskey v. New York Life Ins. Co.*, 292 Pa.Super. 1, 436 A.2d 690, 692 (1981) (inferring from uncontroverted testimony and documentary evidence that insured knowingly and in bad faith misrepresented his medical condition when answering the medical questionnaire).

What is that evidence? William J. Glosser died on April 21, 1992. The executrix of the estate of Glosser, Dawne Ney ("Ney"), testified that Angst contacted her after the death of Glosser, claiming that he represented Glosser. Deposition of Ney ("Dep.") at 9. According to Ney, she clearly expressed, at the onset, her desire to sign all checks. Dep. at 15. Despite her wishes, Angst established a checking account for the estate and withdrew money from the account by issuing checks payable to himself or the professional corporation, which he signed, without her authorization. Dep. at 10–11, 13, 15. Angst recorded the purpose of each withdrawal from the account with a notation on the memo line, appearing on the bottom left corner of each check. Angst denoted "predeath legal expense" on check number 101 dated June 10, 1992, in the amount of $3,200. However, Ney was unaware of any debts or

expenses owed by Glosser and defendants have presented no evidence of this purported debt for pre-death legal expenses. Dep. at 19. From June 11, 1992, through March 1994, Angst wrote five checks (numbers 102, 108, 138, 139 and 151) in varying amounts ranging from $350 to $10,000 to cover what he designated "legal/administrative expenses," "administrative expenses" or "legal/administrative fees." However, Angst and Ney never discussed any fees payable to Angst for acting as the lawyer for the estate. Dep. at 15. The remaining checks numbered 103, 119, 120, 121, 122, 123, 124, 126, 128, and 130, written from June 1992, through June 1993, were payable to Thomas E. Angst or the professional corporation with a memo to indicate "transfers to the Skippack escrow account." Ney testified that she did not know the meaning of this designation. Dep. at 24. Because Angst had offices located in Skippack, Pennsylvania, I infer that this designation indicated the firm escrow account. However, Ney never gave permission for Angst to write checks payable to himself or his professional corporation. Dep. at 15. When Angst completed and submitted the insurance application on behalf of the professional corporation in May 1994, he had already withdrawn from the estate checking account $148,869.42, without authorization from the executrix of the estate and for reasons unbeknownst to the executrix.

In July 1992, when Ney inquired about the distribution of specific bequests to beneficiaries in accordance with the terms of Glosser's will, Angst refused to respond to her inquiry. Dep. at 43–44. Thereafter, Ney attempted on several occasions to meet with Angst. Each time Ney scheduled an appointment with Angst, Angst's secretary called to cancel the meeting. Dep. at 45. In sum, Angst cancelled approximately twenty or thirty scheduled meetings. Dep. at 47–48. When Angst finally attended a meeting with Ney and her attorney, Angst simply gestured with his hands in response to questions about the assets of the estate of Glosser. Dep. at 48. Furthermore, Angst ignored the repeated requests of Ney to obtain an accounting. Dep. at 49. All of Angst's evasive activity took place before he submitted the

application for insurance on behalf of the professional corporation.

■■■ Defendants fail to offer a scintilla of evidence to contradict or refute the testimony of Ney. Nor do defendants attempt to justify the checks written by Angst. To defeat a motion for summary judgment the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356. Defendants have failed to meet this burden. I find that defendants have failed to offer any suggestion to shed doubt on the obvious conclusion that a reasonable person in the position of Angst would have known, at the very least, that neglect of a client's case, including consistent cancellations of scheduled appointments, creates a legitimate basis for a legal malpractice claim and, furthermore, that the (1) failure to provide a reasonable explanation when questioned about assets over which the attorney has control and (2) failure to comply with the request for an accounting to justify the disposition of such assets could give rise to a claim for legal malpractice or misappropriation. I conclude that a reasonable jury could not find that Angst could or would have no idea of the possibility of a legal claim against him in light of the events that transpired and the acts or omissions for which he was personally responsible. No genuine issue of material fact remains with regard to the knowledge and bad faith of Angst at the time he completed and submitted the insurance application, which contained misrepresentations indicating no knowledge of circumstances, acts, errors or omissions that could result in a professional liability claim against any attorney of the firm, on behalf of the professional corporation.

■■■ Although defendants contend that a genuine issue of material fact remains with respect to the reliance of Mt. Airy on the representations of Angst, defendants have not pointed to any evidence of record to support their contention. The express terms of the insurance policy state, "In consideration of the payment of the premium and *in reliance upon the statements in the application and supplements,* attached hereto and made a part hereof, and subject to all of the terms of the policy, the Company agrees with the NAMED INSURED as follows," *see* Motion for summary judgment, Exhibit A (emphasis added). Condition XIII of the policy provides:

> By acceptance of this policy, all INSUREDS reaffirm as of the effective date of this policy that (a) the statements in the application including all information communicated by the INSURED to the Company, attached hereto and made a part hereof are all INSUREDS' agreements and representations, (b) *this policy is issued in reliance upon the truth and accuracy of such representations* and (c) this policy embodies all agreements between all INSUREDS and the Company or any of its agents relating to this insurance.

*See* Motion for summary judgment, Exhibit A (emphasis added). Furthermore, Lucy Aeillo, the supervisor of underwriters at the time Angst submitted the application for coverage of his law firm, confirmed in a sworn statement that the representations on the application were material and that the underwriting department relied on the representations in agreeing to issue the policy to Thomas E. Angst & Associates, P.C. *See* Motion for summary judgment, Exhibit A. Upon consideration of the evidence of record, I conclude that no reasonable jury could find that the misrepresentations on the application did not influence the judgment of the insurer in issuing the policy to Thomas E. Angst & Associates, P.C.

In sum, defendants have failed to meet their burden to show that they will be able to produce admissible evidence at trial to defeat the grounds upon which the motion for summary judgment is based. I conclude from the evidence of record that no reasonable jury could find that Angst's representation that the law firm applicant had no knowledge of any lawyers in the firm who knew of any circumstances, acts, errors or omissions that could result in a professional liability claim against any attorney of the firm was made in good faith and without knowledge of (1) his neglect managing the calls, appointments, and requests of Dawne Ney, a client of the firm, and (2) his unauthorized transfer of

funds from the estate of Glosser to himself and the firm. I further conclude that no reasonable jury could find that Mt. Airy did not rely on the statements made by Angst in the application, in light of the express terms of the insurance policy and the sworn statements of the underwriter.

This Court concludes that Mt. Airy has proven every element to support its cause of action, *i.e.,* the statements made by the law firm applicant were false; (2) the statements made were material; (3) the applicant knew the statements were false and made them in bad faith; and (4) Mt. Airy relied on the statements in issuing the policy. Accordingly, summary judgment will be granted in favor of Mt. Airy and against defendants.

An appropriate Order follows.

### ORDER

**AND NOW,** this 22nd day of January, 1997, upon consideration of the motion of plaintiff Mt. Airy Insurance Company ("Mt. Airy") for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (Document No. 12), the various briefs of the parties relating thereto, and the pleadings, depositions, answers to interrogatories, admissions on file, affidavits, and other discovery of record, having found that there remain no genuine issues of material fact, it is hereby **ORDERED** that the motion for summary judgment is **GRANTED** and judgment is hereby entered in favor of plaintiff Mt. Airy Insurance Company and against defendants.

**IT IS HEREBY DECLARED** that the Professional Liability Insurance Policy No. 524–197695–6 issued by Mt. Airy to Thomas E. Angst and Associates, P.C. is void ab initio and Mt. Airy has no obligation to the named insured under the policy.

**IT IS FURTHER ORDERED** that Mt. Airy shall return to the named insured, within 30 days of the entry of this Order, any and all premiums paid by the named insured in connection with the issuance of the Professional Liability Insurance Policy No. 524–197695–6, or if further judicial review is ob-

tained, within 30 days of the entry of final judgment.

**THIS IS A FINAL ORDER.**